HARRY EISNER et al., Doing Business under the Name of D & G SHEET METAL WORKS, Plaintiffs, *v.* NORMAN SCHULMAN, Defendant.

Supreme Court, Special Term, Kings County, February 28, 1950.

*Jacob A. Singer* for plaintiffs.

*Samuel S. Diamond* for defendant.

FENNELLY, J. This is an action for an injunction restraining the defendant from infringing on the rights of the plaintiffs and for damages.

On January 27, 1949, the defendant by a bill of sale, which is Exhibit A, annexed to the complaint, sold to the plaintiffs a business which consisted of manufacturing and selling custom built radiator enclosures. The business was located at 5813 Third Avenue in the borough of Brooklyn. The last clause in the bill

of sale, which was a filled in printed form, is a restrictive covenant under which the defendant agreed not to engage in business, etc., within a radius of twenty square blocks from the aforesaid premises for a term of three years. The " 20 " and " 3 " were inserted in blank spaces in the printed form. It is undisputed that defendant entered into a partnership with one Robert Mandell on September 8, 1949, and that this partnership opened a business substantially the same as plaintiffs' at premises 5610 New Utrecht Avenue in the borough of Brooklyn. The partnership is still in business at this address.

The plaintiffs contend that this is a violation of the restrictive clause.

The dispute revolves around the meaning to be given to " 20 square blocks." The plaintiffs contend that by " 20 square blocks " is meant within twenty blocks in any direction from the premises 5813 Third Avenue in the borough of Brooklyn. It appears that the avenue blocks in this locality are approximately 900 feet long and the streets much shorter. If the meaning to be given to this restrictive clause is that contended for by the plaintiffs, the New Utrecht Avenue address comes within this restricted area.

The defendant contends that the word " block " used in this restrictive covenant is synonymous with what the defendant calls a " standard block " somewhere between 227 and 260 feet. He contends that the word " radius " as used in this restrictive clause means a straight line drawn from the center to the circumference of a circle. Taking these two definitions, the defendant contends that the restricted area is a circular limit defined by a semidiameter of the length of the twenty so-called standard blocks running from 5813 Third Avenue in the borough of Brooklyn, to the circumference of the circle. If defendant's contentions be accepted, the premises 5610 New Utrecht Avenue do not come within the proscribed distance. There is nothing in the record before me in the way of evidence to indicate what a standard block is. Defendant desires the court to take judicial notice of this.

It becomes necessary for the court to determine the intent of the parties at the time they agreed upon this restrictive clause. It would seem to me that they had in mind not any so-called standard block, but the actual blocks in the immediate locality in which the Third Avenue business was situated.

In Webster's New International Dictionary (2d ed., Unabridged), the following among others have been given as definitions of " radius ".

" 3. \* \* \* loosely, any area bounded or conceived of as bounded, by certain prescribed limits; as *radius* of commercial activity; \* \* \*

" 6. Geom. A right line extending from the center of a circle or sphere to the curve or surface; the semidiameter of a circle or sphere."

This loosely drawn covenant has received different interpretations by the courts.

Recently, in *Saprones* v. *Kontzamanys* (196 Misc. 477), the court seemed to feel that the geometric definition should be applied.

In *Jacobs* v. *Patlis* (N. Y. L. J., Jan. 8, 1948, p. 92, col. 5), Mr. Justice RUBENSTEIN said: " It seems to me that the terms ' within a radius of 5 square blocks ' used by them are ambiguous. The word ' radius ' means a circular limit defined by a radius of a specified length. There is no such radius fixed by the words ' 5 square blocks.' I am convinced too that neither knew that a line drawn from the center of a circle to any point on the circumference is a ' radius.' I am equally satisfied that they did not know that a square was a four-sided figure, all sides being of equal length and the interior angles thereof being right angles. What then did they intend when they used the language set out in the covenant? I believe they used such verbiage in the same way any other simple folks would have used it. They meant what is commonly understood by the word ' block ', that if one went out of the store and walked five blocks in any direction that defendant could not do business within the area of the figure thus formed by the exterior boundaries of the distances walked. This seems to me to be the fair intendment of their bargain.

" In this conclusion I find support in the case of *Bernfeld* v. *Freedenberg* (125 Misc. 645), in which a construction of ' within a radius of 5 square blocks measured from the location ' of the store sold was involved. It should be noted that the language is almost identical with the language in the covenant at bar. Concerning such language, Mr. Justice HAGARTY, then sitting as a member of this court, said: ' The intention was that the defendant should not engage in a similar line of business within the limits of any square block, i.e., the territory defined by streets surrounding it, distant less than five from any part of the square block in which the plaintiff's store is located.' "

Giving to the restrictive covenant the latter meaning with which I am in accord, the defendant has violated this covenant and plaintiffs are entitled to an injunction.

When the business was sold by the defendant to plaintiffs, defendant was ill and, while he signed the bill of sale, his brother Ralph took charge of the details in arranging the sale. Ralph testified that in discussing the limit within which defendant would do no business for three years, and at the time of the drawing up of the bill of sale, it was agreed that defendant Schulman would stay a mile away from the Third Avenue place of business. There is testimony that measured by a speedometer, the New Utrecht Avenue business is a mile and five-eighths away. The plaintiffs insist that there was never any mention of a mile limitation, and I am finding this to be a fact, and am putting no credence in the testimony that the distance of a mile was discussed.

Taking into consideration all of the testimony that was submitted, no damages are allowed. Costs are granted to plaintiffs.

Submit judgment upon two days' notice of settlement.

Pleadings and exhibits may be had from the clerk.