■ In the Matter of HENRY BRENNER, Respondent, v HART SYSTEMS, INC., Appellant. (Matter No. 1.) In the Matter of HENRY BRENNER, Respondent, v HARVEY GOLDSMITH et al., Appellants. (Matter No. 2.)—(1) In a proceeding pursuant to CPLR article 78, *inter alia,* to compel Hart Systems, Inc., to submit to an examination of its corporate books and records, Hart Systems, Inc., appeals from a judgment of the Supreme Court, Nassau County (Berman, J.), dated July 16, 1984, which, *inter alia,* granted the petition in its entirety and ordered appellant to produce said records for petitioner's examination, and (2) in a related action for injunctive relief and specific performance of a shareholder agreement, defendants Harvey Goldsmith, Morris Kaufman and Hart Systems, Inc., appeal from an order of the same court, dated June 21,

1984, which granted plaintiff's motion for a preliminary injunction temporarily enjoining them from proceeding with any meeting to elect corporate directors unless done so in accordance with the terms of the aforesaid agreement.

Judgment dated July 16, 1984 and order dated June 21, 1984 affirmed, with one bill of costs.

Hart Systems, Inc. (Hart) is a domestic corporation created in 1973. The sole shareholders of Hart are Henry Brenner (Brenner), Harvey Goldsmith (Goldsmith) and Morris Kaufman (Kaufman). The three men entered into a shareholder agreement on October 1, 1974, which provided, in part, as follows: "2. Directors of the Corporation. (a) Each of the Shareholders shall vote at each meeting of Shareholders of the Corporation at which directors are elected, all of the Shares owned by him for the election of the following persons as directors of the Corporation: Kaufman, Brenner, and Goldsmith".

Pursuant to the above provision, the three principals of the corporation acknowledged each other's status as a corporate director. However, disagreements soon arose between Brenner, on the one hand, and Goldsmith and Kaufman, on the other, concerning the management and finances of the corporation. In response to Brenner's informal criticisms, Goldsmith sent to Brenner a letter dated May 23, 1977, which contained, *inter alia,* the following statements:

"I must now tell you that because of your attitudes and what I consider disruptive practices you shall be entitled to that which the law permits a minority stockholder * * *

"From this point forward all business you have with the Company should be presented at formal meetings of the Board of Directors. I further wish to remind you that all business will be conducted by majority vote and you will be given full opportunity to present your point of view".
The letter was signed by Goldsmith in his capacity as president of Hart.

Subsequently, the accounting firm which had previously provided accounting services for the corporation resigned from the Hart account in 1982, suggesting in a letter to Brenner's counsel that some irregularities existed in the books kept for the corporation. Thereafter, on November 18, 1983, Brenner made a formal written request to fully inspect and examine all the financial documents and records of the Hart corporation. This request was denied in a letter dated February 23, 1984. Brenner then commenced on March 7, 1984 a CPLR

article 78 proceeding (matter No. 1) against the corporation, seeking to compel it to submit to an inspection of its books and records.

On April 9, 1984, while that proceeding was still pending before Special Term, Goldsmith and Kaufman sent a notice to Brenner that a shareholders' meeting would be conducted 10 days hence for the purpose of electing a board of directors for Hart. Fearing that Goldsmith and Kaufman, who owned a majority of the corporate stock, would attempt to oust him from his position as a corporate director, Brenner commenced an action (matter No. 2) seeking specific performance of the 1974 shareholder agreement and an injunction against the election of anyone as a director in Brenner's stead. Brenner also moved for a preliminary injunction to enjoin Goldsmith and Kaufman from exercising their voting rights in contravention of the aforesaid agreement. He obtained a temporary restraining order to this effect.

By an order dated June 21, 1984, the motion for a preliminary injunction was granted. Likewise, Brenner's petition to compel an inspection of the corporate books and records was granted by a judgment dated July 16, 1984. We now affirm both the order and the judgment.

Hart's contention that Brenner was removed as a director of the corporation by virtue of the letter dated May 23, 1977 is without merit. While the letter did make reference to the treatment of Brenner as a minority stockholder for some purposes, it also stated that any business Brenner had with the corporation *"should be presented at formal meetings of the Board of Directors"* (emphasis supplied). The clear import of this statement is that Brenner remained a director of Hart. Therefore, the 1977 letter authored by Goldsmith did not constitute, as a matter of law, a proper removal of Brenner, for its language is contradictory and ambiguous. Moreover, a closer examination of the text discloses that, even if the letter was an unequivocal attempt to remove Brenner, it was an unauthorized attempt to do so and was thus invalid as a matter of law. This is so because the letter contained only personal comments from Goldsmith to Brenner and was signed only by Goldsmith in his capacity as corporate president. Conspicuously absent from the document was any reference to any action taken by either the shareholders or the board of directors to remove Brenner. Therefore, we reject any contention that this letter from a corporate officer constituted a valid removal of Brenner by the shareholders or board of directors of Hart. We also note that, in any event, since no

election was ever held to replace Brenner after he was purportedly "removed" in 1977, he continued to function as a director of the corporation with all the rights and obligations concomitant with that position *(see,* Business Corporation Law § 703 [b]; *Matter of Griffin v Varflex Corp.,* 79 AD2d 857). Therefore, Special Term properly issued a judgment in Brenner's favor in the CPLR article 78 proceeding, for, as a director, he has the absolute and unqualified right to inspect and examine the corporate books and records *(see, Matter of Cohen v Cocoline Prods.,* 309 NY 119; *Matter of Lau v DSI Enters.,* 102 AD2d 794). The contention that Brenner is hostile to the Hart corporation does not affect this right of inspection *(see, Matter of Dusel v Castellani,* 43 AD2d 799).

The Statute of Limitations argument advanced by Hart is also without merit because it assumes that Brenner was removed as a director in 1977. Since this is clearly not the case, we find that the commencement of the proceeding some two weeks after Hart refused to permit an inspection of its books was in all respects timely.

Likewise, we find that Special Term did not abuse its discretion in granting Brenner's motion for the preliminary injunction. In order to obtain temporary injunctive relief, the movant must demonstrate (1) a likelihood of ultimate success on the merits, (2) irreparable injury absent a granting of the injunction, and (3) a balancing of the equities in the movant's favor *(Barone v Frie,* 99 AD2d 129, 132; *Albini v Solork Assoc.,* 37 AD2d 835; *see,* CPLR 6301). Brenner has satisfied this three-pronged test by establishing that (1) he has a strong likelihood of success on the merits because both Goldsmith and Kaufman signed the shareholder agreement of 1974 and such agreements are generally viable *(see,* Business Corporation Law § 620 [a]; *Clark v Dodge,* 269 NY 410; *721 Corp. v Morgan Guar. Trust Co.,* 40 Misc 2d 395); (2) irreparable injury would result from a denial of the motion because Brenner would then be voted out of office by the other shareholders and thus lose his absolute right to inspect the corporate books; and (3) the equities balance in his favor because the accounting firm's statements as to the inadequacy of the corporate bookkeeping caused Brenner to seek the inspection and because Brenner, as a director, is the only person in a position to discover whether any irregularities and/or improprieties exist in the corporation's record keeping. In light of this showing by Brenner, Special Term properly granted the motion. A prompt trial is necessary to examine the claims of Goldsmith, Kaufman and Hart concerning Brenner's violation

of certain agreements and of the fiduciary duty he owes to the corporation. Until such a trial is held, the preliminary injunction will have the beneficial effect of preserving the status quo *(see, Chrysler Corp. v Fedders Corp.,* 63 AD2d 567; *721 Corp. v Morgan Guar. Trust Co., supra).* We have examined the remaining contentions of the appellants on both appeals and find them to be without merit. Lazer, J. P., O'Connor, Niehoff and Kooper, JJ., concur.